UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 22-0070 (RDM) |
| | : | |
| **LUCAS DENNEY,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT LUCAS DENNEY'S EMERGENCY MOTION FOR RELEASE FROM CUSTODY AND EMERGENCY MOTION TO DISMISS CASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully responds to Defendant Lucas Denney's Emergency Motion for Release from Custody and Emergency Motion to Dismiss Case. ECF No. 23. Because the government violated the Speedy Trial Act by failing to file an indictment or information within the time frame set forth in 18 U.S.C. § 3161, dismissal of the complaint and indictment is appropriate. Under the factors set forth in 18 U.S.C. § 3162(a)(1), however, that dismissal should be without prejudice.

**BACKGROUND**

On December 13, 2021, Defendant Lucas Denney was arrested in his home state of Texas on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather. Denney was charged with numerous felony violations related to his violent actions at the Capitol on January 6, 2021, including 18 U.S.C. §§ 111(a)(1) and (b) and 2; Assaulting, Resisting, or Impeding Certain Officers or Employees and Using a Deadly or Dangerous Weapon or Inflicting Bodily Injury; 18 U.S.C. § 231(a)(3), of Obstruction of Law Enforcement During Civil Disorder; 18 U.S.C. § 1512(c) and (k), Obstruction of an

1

Official Proceeding and Conspiracy to Obstruct an Official Proceeding; 18 U.S.C. §§ 1752(a)(1), (2), (4) and (b)(1)(A), Knowingly Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, Disorderly and Disruptive Conduct in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, and Engaging in Physical Violence in any Restricted Building or Grounds with a Deadly or Dangerous Weapon; and 40 U.S.C. § 5104(e)(2)(F), Violent Entry and Disorderly Conduct on Capitol Grounds. ECF Nos. 1, 5.

Denney made his initial appearance in the Western District of Texas in front of Magistrate Judge Collis White on December 14, 2021. *See* Exhibit A, Criminal Docket for Case No. 21-mj-2264 CW. On December 17, 2021, Judge White detained Denney and issued an order of removal, as well as an order detaining Denney without bond. *See* Exhibit B, Order of Removal, and Exhibit C, Order of Removal and Detention. The record does not reflect that a preliminary hearing took place or that Denney waived his right to it. It further does not reflect that he waived any time under the Speedy Trial Act with regard to the charging instrument or trial.

On December 20, 2021, Juan Neri, Denney's appointed attorney in Texas informed the government that he would not be able to represent Denney in the matter going forward. *See* Exhibit D, December 20, 2021, email correspondence from Attorney Neri to AUSA Benet Kearney. On December 21, 2021, the government emailed staff for the three Washington, D.C. magistrate judges indicating that an initial appearance would be necessary for Denney and his co-defendant, Donald Hazard. *See* Exhibit E, December 21, 2021, email correspondence from AUSA Kearney to court staff. On December 28, 2022, the government emailed Magistrate Judge Harvey's chambers again asking to schedule the initial appearances for Denney and Hazard. *See* Exhibit F, December 28, 2022, email from AUSA Kearney to Judge Harvey's chambers. On December 30, 2021, the government again reached out to the Court and received an email from

staff indicating that the court was attempting to locate Denney. *See* Exhibit G, December 30, 2021, email correspondence between AUSA Kearney and court staff. The government responded regarding Hazard's location and said it would reach out if it learned anything about Denney. *Id*. On January 4, 2022, government's counsel emailed court staff to indicate that Denney was located at the Val Verde Detention Center in Del Rio, Texas. *See* Exhibit H, January 4, 2022, email from AUSA Kearney to court staff. Court staff responded the same day indicating that they had been tracking Denney but had been unable to contact the facility. *Id*.

On January 25, 2022, this matter was reassigned to AUSA Jennifer Rozzoni, as the assigned AUSA, Benet Kearney, was going on an extended medical leave. AUSA Kearney remained assigned to the case. On January 27, 2022, AUSA Rozzoni entered her appearance. ECF No. 12. Denney's counsel, John Pierce, entered his appearance the same day. ECF No. 13. On February 1, 2022, Elizabeth Oglesby from the United States Marshal's Service emailed court staff, the government, and Pretrial Services, among others, to indicate that Denney had arrived at the Northern Neck Regional Jail on January 31, 2022. Exhibit I, February 1, 2022, email correspondence from Elizabeth Oglesby.

On February 4, 2022, Attorney Pierce reached out to the government requesting a Zoom link for an initial appearance for Denney that he believed was going to occur on February 7, 2022. Exhibit J, February 4, 2022, email from John Pierce. In the email, Mr. Pierce indicated he had left a message for the courtroom deputy, as well. *Id.* The same day, AUSA Rozzoni also emailed Attorney Pierce with the duty Zoom information presuming that the initial appearance would be on the calendar later that afternoon. Exhibit K, February 4, 2022, email correspondence between AUSA Rozzoni and Attorney Pierce. On February 6, 2022, AUSA Rozzoni and Attorney Pierce again exchanged emails regarding the apparent February 7, 2022, hearing and both came to the

conclusion it was not on the February 7, 2022 calendar. Exhibit L, February 6, 2022, email correspondence between AUSA Rozzoni and Attorney Pierce. In the same exchange, AUSA Rozzoni indicated she would contact the courtroom deputy to see about scheduling the initial appearance. *Id*.

On February 15, 2022, Attorney Pierce emailed AUSA Rozzoni to ask about the initial appearance scheduling. Exhibit M, February 15, 2022, email correspondence between AUSA Rozzoni and Attorney Pierce. In the initial email, Attorney Pierce indicated that he had contacted the courtroom deputy for Magistrate Judge Meriweather via email and voicemail message. *Id*. AUSA Rozzoni thanked Attorney Pierce for doing so and explained that she had not had a chance to contact the Court. *Id*.

On February 23, 2022, Attorney Pierce emailed AUSA Rozzoni to ask about the timing of the indictment. Exhibit N, February 23, 2022, email from Attorney Pierce to AUSA Rozzoni. In response to the email, AUSA Rozzoni emailed the District of Columbia magistrate judge clerks asking about the scheduling of the initial appearance for Denney. Exhibit M, February 23, 2022, email from AUSA Rozzoni to court staff. AUSA Rozzoni copied Attorney Pierce on the email. *Id*. Court staff responded the same day. *Id*. After the court staff indicated they were scheduling the initial appearance, AUSA Rozzoni also responded to Attorney Pierce about the timing of the indictment. *Id*. On February 25, 2022, the court scheduled Denney's initial appearance for March 10, 2022. *See* February 25, 2022, docket entry.

On March 2, 2022, Denney filed a Motion for Release from Custody arguing that no court had conducted a preliminary hearing within 14 days of his initial appearance as required under Federal Rule of Criminal Procedure 5.1(c). ECF No. 16. The government filed its response on March 3, 2022. ECF No. 21. On March 5, 2022, Denney filed an Emergency Motion for Release

4

from Custody and Emergency Motion to Dismiss Case, ECF No. 23, and a related Errata Notice, ECF No. 24, arguing that the complaint should be dismissed as the government had failed to file an information or indictment within the 30-day time period provided by the Speedy Trial Act, 18 U.S.C. § 3161(b).

On March 7, 2022, a federal grand jury returned a one-count indictment against Denney alleging he assaulted a federal officer on January 6, 2021, in violation of 18 U.S.C. § 111(a) and (b).  ECF No. 25. Also on March 7th, this Court held a status conference related to Denney's two motions. During the hearing, the Court set a briefing schedule for Denney's motion that was later memorialized for the parties in a March 8, 2022 minute order. In the minute order, this Court denied Denney's Motion for Release (ECF No. 16) as moot because the grand jury had returned an indictment against Denney. Pursuant to the order, the government now files its response to Denney's Motion for Release from Custody and Emergency Motion to Dismiss Case (ECF Nos. 23, 24).

## ARGUMENT

**I.  Dismissal of the complaint and indictment is appropriate because the indictment was filed outside of the 30-day period under 18 U.S.C. § 3161(b), but dismissal should be without prejudice because the offense is serious, the error was unintentional, and the delay has not prejudiced Denney.**

The Speedy Trial Act was designed to give effect to a criminal defendant's right to a speedy trial under the Sixth Amendment. *United States v. Rojas-Contreras,* 474 U.S. 231, 238 (1985) (Blackmun, J., concurring) (citing H.R. REP. NO. 96-390, at 3 (1979)). Relevant here, the Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . ." 18 U.S.C. § 3161(b). Some periods of delay are excluded from the time within which an information or an indictment must be filed including "delay resulting from transportation of any

5

defendant from another district . . . except that any time consumed in excess of ten days from the date an order of removal or an ordering directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F).

The thirty-day period to indict Denney began upon his arrest on December 13, 2021. 18 U.S.C. § 3161(b). There is no evidence in the record that Denney waived any of his rights under the Speedy Trial Act when he appeared in a Texas court on December 14 or on December 17, 2021. Magistrate Judge White's order of removal was entered on December 17, 2021. Ten additional days were added to the thirty-day period for indictment or information pursuant to 18 U.S.C. § 3161(h)(1)(F). Thus, the government should have presented an indictment to the grand jury or filed an information with the Court within 40 days of December 13, 2021, or on or before January 22, 2022.  No indictment or information was filed within that time frame, as Government's counsel mistakenly believed that the 30 days would be calculated from Denney's first appearance in this district.  This Court must therefore look to 18 U.S.C. § 3162(a)(1) for the proper remedy.

Under § 3162(a)(1), if no information or indictment is filed within the time limit required by § 3161(b) and as extended by § 3161(h), such charge against the defendant "shall be dismissed or otherwise dropped." In determining whether dismissal should be with, or without, prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." The court may also consider "any prejudice to the defendant resulting from the speedy trial violation." *United States v. Mclendon,* 944 F.3d 255, 263 (D.C. Cir. 2019). Further, although the language of § 3162(a) speaks of dismissing the complaint, an indictment brought outside the

6

thirty-day period should be dismissed if the underlying complaint should have been dismissed. *See United States v. Derose*, 74 F.3d 1177, 1182-83 (11th Cir.1996); *United States v. Antonio*, 705 F.2d 1483, 1486 (9th Cir.1983). Under the relevant factors, this Court should conclude that dismissal without prejudice is the appropriate remedy here.

### A. Seriousness of the Offense

The charges against Denney are of the utmost seriousness. Those charges arise within the context of the attack on the U.S. Capitol, on January 6, 2021, a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

Denney is charged in the complaint with conspiracy and substantive violations of assault, obstruction of law enforcement during a civil disorder, and obstruction of an official proceeding. Other than seditious conspiracy in violation of 18 U.S.C. § 2384 (which has been charged in only one case), these are the most serious offenses charged in relation to the attack on the Capitol. This factor thus militates strongly in favor of a dismissal without prejudice.

### B. Facts and Circumstances Leading to the Dismissal

The facts and circumstances also support a without-prejudice dismissal with prejudice. In *United States v. Taylor*, the Supreme Court noted that "bad faith," a "pattern of neglect," or "something more than an isolated unwitting violation" on the government's part would support a dismissal with prejudice. 487 U.S. 326, 339 (1988); *see also United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993). In *Wright*, the D.C. Circuit explained that the sanction for the government's failure to comply with the Act is dismissal itself. *Wright*, 6 F.3d at 814. Accordingly, the court does not consider the fact of a speedy trial failure in deciding whether to dismiss the case with or

without prejudice. *Id*. ("The decision of whether to dismiss with or without prejudice already assumes the Government's failure."). Instead, "the inquiry becomes why the Government failed." *Id*. at 814-15 (finding that the facts and circumstances weighed against a dismissal with prejudice where "the Government failed for relatively unobjectionable reasons").

Further, as the Supreme Court in *Taylor* noted, "[i]t is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." 487 U.S. at 342. Yet the Speedy Trial Act does not require dismissal with prejudice for every violation. *Id*. To this point the *Taylor* court explained:

> Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely. If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.

*Id*.

To be sure, the government failed to comply with the Speedy Trial Act in this case. But there is no evidence of bad faith, a pattern of neglect, or something more than an isolated incident that resulted from a number of unfortunate factors. For example, despite government's counsel's miscalculation of the Speedy Trial Act deadlines, she attempted to schedule an initial appearance for Denney on several occasions, beginning only a few days after his appearances in the Western District of Texas, but was unable to do so. Then, upon Denney's arrival at the Northern Neck detention facility, the Court, the government, and pretrial services were made aware via email that the defendant had arrived. Given his communications with the government, there can be no dispute

8

that defense counsel was also aware of Denney's location. Nonetheless, confusion appeared to reign among the parties, including the government and defense counsel, as to how to schedule Denney's initial appearance. While it admittedly took 22 days (February 1 to February 23) to get Denney scheduled for his first appearance in the District of Columbia court, there was nothing intentional or nefarious about the delay. It was an isolated incident, unlikely to happen again, and the time frame—while undoubtedly regrettable—is nevertheless not significantly egregious to warrant dismissal with prejudice.

### C. Impact of Reprosecution

The third factor, the impact of reprosecution, "depends in large part" on the prior two factors, namely, the seriousness of the offense and the facts and circumstances leading to dismissal. *See McLendon*, 944 F.3d at 265 (citing *Wright*, 6 F.3d at 816). Thus, if government misconduct is responsible for the delay, a without-prejudice dismissal "is more likely to adversely affect the administration of justice and the administration of the Act because it allows reprosecution despite government misconduct." But failure to comply with the Speedy Trial Act alone is not enough to warrant a with-prejudice dismissal. *See id.* at 265-66 (noting that "because it is the government's and the court's responsibility to ensure compliance with the [Speedy Trial] Act," "failure to comply with the Act alone cannot support an adverse impact finding").

As noted above, there was no government misconduct or "subterfuge," *McLendon*, 944 F.3d at 266, here. Instead, there were regrettable "scheduling difficulties among the parties, including the court," as well as "haste" to "convene a grand jury" and indict Denny given potential "STA concerns." *Id.* Specifically, there was originally a misunderstanding by the government about whether a waiver of the Act had occurred in the Western District of Texas. Further, once Denney arrived at the detention facility in the D.C. area, there was difficulty and confusion

9

between the parties as to how to get an initial appearance scheduled. Under these particular circumstances, reprosecution would not adversely impact the administration of the Speedy Trial Act or the administration of justice. *See id.*

### D.  Prejudice to the Defendant

Finally, the presence or absence of prejudice to the defendant is a relevant consideration under § 3162(a)(2). *Taylor*, 487 U.S. at 334. The longer the delay, the greater the presumptive or actual prejudice, both in terms of a defendant's ability to prepare for trial and restrictions on his or her liberty. *Id*. at 340.  Trial prejudice is prejudice that impacts a defendant's ability to mount a defense at trial. *McLendon*, 944 F.3d at 266 (*citing United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016). Non-trial prejudice includes prejudice in the defendant's liberty interest and his or her own personal, social, and economic life. *Id*.

As to trial prejudice, Denney can point to nothing that would indicate the delay has disadvantaged any defense he may have at trial. This matter is in an early stage and the government has yet to provide a significant amount of discovery to Denney's counsel to review and consider. He can show no trial prejudice resulting from this delay.

As to non-trial prejudice, as of the day of Denney's indictment on March 7, 2022, 44 days had passed since the January 22 deadline for indictment under the Act. Despite this period of time, courts have found similar and significantly longer periods of delay still support a dismissal without prejudice despite any claimed prejudice to the defendant's liberty interest. *See United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004) (even though 101 nonexcludable days had passed, the dismissal was appropriately without prejudice because the defendant did not "specifically state how this 31-day delay affected his life circumstances, if at all"); *see also United States v. Jones*, 213 F.3d at 1258 (although the passing of 216 or 414 nonexcludable days "is very

10

serious," the seriousness of the offense, the government's lack of responsibility leading to the dismissal, and the defendant's inability to demonstrate trial prejudice suggested that a dismissal without prejudice was appropriate); *United States v. Koory*, 20 F.3d 844, 848 (8th Cir. 1994) (a 59-day delay, while not insubstantial, is not so substantial that dismissal with prejudice is mandated regardless of the circumstances). Thus, when examined in the context of the case law, the comparatively minor impairment to Denney's liberty interest does not tip the scale in favor of a dismissal with prejudice.

After considering all of the factors under § 3162(a), in addition to any specific prejudice to Defendant Denney, this Court should dismiss the complaint and indictment without prejudice.

## II. No time has run on the 70-day speedy trial clock as the 70-day period provided in 18 U.S.C. § 3161(c)(1) began to run at the filing (and making public) of the indictment.

As set forth in 18 U.S.C. § 3161(c)(1), "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." Here, the indictment was filed on March 7, 2022, and Denney appeared in front of the magistrate judge the same day. Thus, by the terms of the statute, the 70-day time-period began to run on March 7, 2022. Further, in light of Denney's pending motion, the Speedy Trial Act is tolled pending the court's decision on the motion. 18 U.S.C. § 3161(h)(1)(D). Regardless of the status of the trial clock, however, the government acknowledges that the indictment should be dismissed and requests that it be done so without prejudice as argued above.

WHEREFORE, for the reasons stated, the United States respectfully requests that this court recommend to the district court that the complaint and indictment in this case be dismissed without prejudice.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

 /s/ Jennifer M. Rozzoni
Jennifer M. Rozzoni
NM Bar No. 14703
Benet J. Kearney
NY Bar No. 4774048
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(505) 350-6818 / (212) 637-2260
Jennifer.M.Rozzoni@usdoj.gov
Benet.Kearney@usdoj.gov