UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LUCAS DENNEY,<br>        *Defendant*. | Criminal Action No. 22-70 (RDM) |

## ORDER

Pending before the Court is Defendant's motion for release from custody pending sentencing, Dkt. 42. For the following reasons, the Court will **DENY** Defendant's motion.

On March 17, 2022, Defendant pleaded guilty to the one count of assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). Min. Entry (Mar. 17, 2022); *see also* Dkt. 25 (indictment). That charge stemmed from Defendant's participation in the violent attack on the U.S. Capitol on January 6, 2021. According to the affidavit that accompanied the criminal complaint that initiated this matter, Defendant confronted members of the Capitol Police on several occasions, including one instance in which he "picked up a long metal pole from the ground" and "swung" the pole at a police officer, and another in which he "and another rioter grabbed what appears to be a large tube and launched it toward the line of law enforcement officers guarding the west side of the Capitol building." Dkt. 1-1 at 27–28. On another occasion, Defendant "attempted to grab [a] canister of crowd-control sp[ray] away" from an officer, prompting that officer to "deploy[] the crowd-control spray." *Id.* at 25–27.

Following Defendant's guilty plea, the Court set a sentencing hearing for June 9, 2022. *See* Min. Entry (Mar. 17, 2022).  The parties jointly moved to continue that hearing until July 2022, Dkt. 41, and the Court rescheduled Defendant's sentencing hearing for July 21, 2022, Min. Order (May 9, 2022).  Two days after the Court granted the parties' joint motion to continue, Defendant filed the instant motion for release from custody pending sentencing.  Dkt. 42.  Defendant seeks to be "released . . . prior to his sentencing hearing in order to afford him the opportunity to attend to []his personal affairs and family needs before surrendering to the Bureau of Prisons facility to which he is assigned." *Id.* at 7.  But where a defendant has been convicted of a crime of violence, there are only two statutory provisions that permit release pending sentencing, neither of which applies here.[1]

Under the first of these provisions, the Court is required to order that a person convicted of a crime of violence be detained pending sentencing, unless:

(A)  (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B)  the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2); *see also id.* § 3142(f)(1)(A) (including crimes of violence among the kinds of offenses that trigger this provision).  Here, however, Defendant has not filed—or even raised the possibility of filing—a motion for acquittal or new trial, and the government has not

---

[1] Defendant does not contest that his conviction under 18 U.S.C. § 111(b) constitutes a "crime of violence" for purposes of this provision.  *See United States v. Klein*, 533 F. Supp. 3d 1, 10 (D.D.C. 2021) ("The D.C. Circuit has not weighed in, but every circuit to address the issue has . . . conclud[ed] that § 111(b) does constitute 'a crime of violence.'"); *accord United States v. Sabol*, 534 F. Supp. 3d 58, 67–68 (D.D.C. 2021).

2

recommended that "no sentence of imprisonment be imposed." This avenue of relief, accordingly, is unavailable to Defendant.

The second provision permits the Court to release a defendant convicted of a crime of violence if the Court finds by clear and convincing evidence that the person is not likely to flee or to pose a danger to the community, and "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Although the statute does not define "exceptional reasons," "courts have generally read the phrase to mean circumstances that are 'clearly out of the ordinary, uncommon, or rare.'" *United States v. Briggs*, 577 F. Supp. 2d 435, 437 (D.D.C. 2008) (quoting *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993)). In defining the scope of this extraordinary authority, some courts have looked to "a letter from the Justice Department to Senator Paul Simon, the sponsor of the Mandatory Detention for Offenders Convicted of Serious Crimes Act, proposing the 'exceptional reasons' provision and suggesting two hypothetical situations where it might apply." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991) (quoting Letter from Assistant Attorney General Carol T. Crawford to Honorable Paul Simon (July 26, 1989)); *see also United States v. Garcia*, 340 F.3d 1013, 1017–18 & n.4 (9th Cir. 2003). The first hypothetical involved "an elderly man with lifelong community ties, convicted under the federal murder statute of the mercy killing of his wife, [who] challenges the applicability of that statute to mercy killings, a question of first impression in the circuit," while the second "posited a seriously wounded drug dealer whose appeal raised a novel search and seizure issue which could change the outcome of his trial." *DiSomma*, 951 F.2d at 497. These examples suggest "that exceptional reasons exist where, due to a truly unusual circumstance or combination of circumstances, it would be unreasonable,

3

despite the general policy favoring incarceration contained in § 3145(c), to order a particular defendant to be incarcerated." *Garcia*, 340 F.3d at 1018.

Defendant argues that his case presents such "exceptional reasons" because "[f]or nearly 10 years [he] has had primary physical custody of his two minor children following his divorce from their mother in 2012," and "[t]hose children are now ages 12 and 15, and are suffering due to his sudden absence from their lives" following his surrender to federal custody in December 2021. Dkt. 42 at 2. Defendant maintains that the situation "was made worse" because the government's "illegal detention . . . prevented him from having even telephone contact with his two children for over 60 days following his arrest." *Id.*[2] For the following reasons, the Court is unpersuaded.

As an initial matter, the Court pauses to address Defendant's reference to his "illegal detention." *Id.* The Court understands Defendant to refer to the period between his arrest on December 13, 2021, *see* Dkt. 5, and the filing of the indictment in this matter on March 7, 2022, *see* Dkt. 7. The government, for its part, acknowledges that it "violated the Speedy Trial Act by failing to file an indictment or information within the time frame set forth in 18 U.S.C. § 3161." Dkt. 27 at 1. Nor does the government dispute that, following Defendant's initial appearance before a magistrate judge in the Western District of Texas on December 14, 2021, *see* Dkt. 27-1,

---

[2] Elsewhere, Defendant suggests that § 3145(b), rather than § 3145(c), governs the relevant analysis. *See* Dkt. 42 at 5. But § 3145(b) applies "[i]f a person is ordered detained by a magistrate judge," 18 U.S.C. § 3145 (b), while § 3145(c) applies where, as here, "[a] person [is] subject to detention" by virtue of a conviction for a crime of violence, s*ee id.* § 3145(c) ("A person subject to detention pursuant to section 3143(a)(2) . . . may be ordered released . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."); *see also id.* § 3143(a)(2) (applying to, among others, those convicted of a crime of violence, by reference to 18 U.S.C. § 3142(f)(1)(A)). And, as Defendant acknowledges, "release pending sentencing is determined on a different standard than release pending trial." Dkt. 42 at 6.

4

Defendant did not appear in court again until his appearance before a magistrate judge in this Court on March 7, 2022, *see* Min. Entry (Mar. 7, 2022).

The government's delay in securing an indictment against Defendant and the related lag between court appearances meant that Defendant's rights under the Speedy Trial Act were violated. For this reason, the government conceded that it would be appropriate for the Court to dismiss the complaint and indictment, although the government argued that any such dismissal should be without prejudice because the alleged offense is a serious one and the error was unintentional. Dkt. 27. But, rather than pursue dismissal of the indictment, Defendant elected to plead guilty, without the benefit of a plea agreement. *See* Min. Entry (Mar. 17, 2022). Defendant offers no evidence, moreover, to back up his contention that "the [g]overnment acted in a deliberate unlawful manner for the sole purpose of continuing to illegally deprive [Defendant] of his liberty." Dkt. 42 at 4. To the contrary, the delay evidently resulted from a miscommunication between government counsel and court staff, and the resulting confusion was compounded by the need for the lead prosecutor on the case to take an "extended medical leave" in the midst of her efforts to arrange for Defendant's initial appearance before this Court. *See* Dkt. 27 at 3–4. To be sure, this explains but does not excuse the deprivation of Defendant's rights. But we are now past that point; Defendant has pleaded guilty to a violent crime, and an acknowledged Speedy Trial Act violation that preceded a guilty plea does not constitute an "exceptional reason" to disregard the usual rule, which requires courts to detain defendants convicted of violent crimes pending sentencing.

That leaves Defendant's argument that release pending sentencing is appropriate because he "has sole legal custody" over his two minor children and "has been responsible for all decisions regarding their welfare" in the decade "following his divorce from their mother in

5

2012." Dkt. 42 at 2.  Although Defendant understandably would like the opportunity "to attend to []his personal affairs and family needs before surrendering to the Bureau of Prisons," he no longer contends that he is unable to communicate with family or his attorneys regarding his children's care, nor does he offer any specifics as to the status of their care or the immediate need for his release.  *Id.* at 7; *cf. id.* at 2 (maintaining that he did not have telephone access for the 60 days immediately following his arrest, on December 13, 2021).  Defendant's motion says nothing about who is currently caring for his children; about how his release would facilitate arranging care for his children while he is incarcerated; or about what, specifically, he needs to do to provide for the care of his children that he cannot do while detained.  Indeed, Defendant makes no mention of his children in the argument section of his brief, and he submits no evidence supporting his motion.  Sadly, there are many cases in which primary caregivers who commit violent crimes are incarcerated pending sentencing, and the Court cannot conclude, without more, that Defendant has carried his heavy burden of showing "that there are exceptional reasons why [his] detention would not be appropriate."  18 U.S.C. § 3145(c).

Rather than explain how his circumstances are "exceptional," Defendant points to three other cases where this Court has declined to detain defendants following the entry of their guilty pleas.  *See* Dkt. 42 at 6–7.  Those cases, however, differ in material respects.  Most importantly, none of Defendant's would-be comparators have pleaded guilty to a crime of violence, and so, unlike Defendant, they are not subject to § 3143(a)(2)'s directive that the Court "shall" detain them unless one of the two avenues discussed above is available.  Each of those comparators, moreover, has been released on personal recognizance since their initial appearances, and, pursuant to their plea agreements, the government agreed not to seek a change in the conditions

6

of their release. Defendant, in contrast, pleaded guilty without the benefit of a plea agreement, and the government opposes release pending sentencing.

The Court, accordingly, concludes that Defendant has failed to demonstrate "that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for release pending sentencing, Dkt. 42, is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 1, 2022