UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
          v.                      :
                                  :          CASE NO. 22 Cr. 070 (RDM)
LUCAS DENNEY,                     :
                                  :
          Defendant.              :

GOVERNMENT'S MEMORANDUM IN SUPPORT OF THE APPLICATION OF
CERTAIN UNITED STATES SENTENCING GUIDELINES PROVISIONS

The United States of America, by and through its attorney, the United States Attorney for

the District of Colombia, hereby submits this memorandum in support of the application of a four-

point enhancement for using a dangerous weapon pursuant to United States Sentencing Guidelines

Section 2A2.2(b)(2).

BACKGROUND

On January 6, 2021, the defendant, Lucas Denney, who was standing in a crowd of rioters

on the Capitol grounds, swung a long PVC pole at a Metropolitan Police Department ("MPD")

Sergeant – Sgt. K.K. – who was armed with crowd-control spray and positioned on an elevated

structure on the West Plaza of the United States Capitol building.[1]   In connection with that

conduct, on March 17, 2022, the defendant pled guilty to a one-count Indictment charging him

with Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation

of 18 U.S.C. §§ 111(a)(1) and (b).   The parties did not enter into a plea agreement and, prior to

the change of plea proceeding, each submitted their own analysis of the relevant sentencing range

---

[1] The defendant's other conduct on January 6, 2021 (and in the weeks before and after) is detailed
in the Government's sentencing submission (ECF No. 46), the pre-sentence investigation report
("PSR") (ECF No. 47), and the parties' joint statement of offense (ECF No. 60-1).

under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").   *See* ECF No. 29

(defendant's calculation) and ECF No. 31 (Government's calculation).   The Government's

analysis included the following adjustments to a base offense level of 14 (U.S.S.G. § 2A2.2(a)):

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(b)(1) | The offense involved more than minimal planning | +2 |
| U.S.S.G. § 2A2.2(b)(2)(B) | The defendant used a dangerous weapon (a pole) | +4 |
| U.S.S.G. § 2A2.2(b)(7) | The defendant was convicted of a violation of § 111(b) | +2 |
| U.S.S.G § 3A1.2(b) | Official victim | +6 |
| U.S.S.G. § 3E1.1(a) & (b) | Acceptance of responsibility | -3 |

ECF No. 31 at 1-2.   This analysis resulted in a total offense level of 25 and a Guidelines range of

57 to 71 months' imprisonment.

The defendant's analysis included the following adjustments to a base offense level of 14

(U.S.S.G. § 2A2.2(a)):

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(b)(2)(C) | The defendant brandished a dangerous weapon (a pole) | +3 |
| U.S.S.G. § 2A2.2(b)(7) | The defendant was convicted of a violation of § 111(b) | +2 |
| U.S.S.G § 3A1.2(b) | Official victim | +6 |
| U.S.S.G. § 3E1.1(a) & (b) | Acceptance of responsibility | -3 |

ECF No. 29 at 3.   This analysis resulted in a total offense level of 22 and a Guidelines range of

41 to 51 months' imprisonment.

On May 5, 2022, the U.S. Probation Office (the "Probation Office") issued a draft PSR

(ECF No. 40) calculating the defendant's offense level as 29, applying all of the enhancements in

the Government's preliminary analysis, above, as well as an additional four points pursuant to

U.S.S.G. § 3B1.5(2)(B) because the defendant used body armor during the commission of a crime of violence.  *See* ECF No. 46 (Government Sentencing Memo) at 50.[2]  This analysis resulted in a total offense level of 29 and a Guidelines range of 87-108 months' imprisonment.   On July 7, 2022, the Government filed its sentencing submission, concurring with the calculation of the Probation Office in the draft PSR.  *Id.*

On July 14, 2022, the defendant filed his sentencing submission.   In that submission, the defendant argued that the 4-point enhancement under U.S.S.G. § 2A2.2(b)(2)(B) (use of a dangerous weapon) did not apply because he did not use the pole "with the intent to commit bodily injury"[3] and filed an unsworn affidavit in which he asserted that he was not targeting or attempting to injure Sgt. K.K. when he swung the pole at him, but was attempting to knock the crowd-control spray device from the officer's hands.   ECF No. 50 at 13-15; ECF. No. 51 at ¶ 30.   Thus, the defendant's new analysis resulted in a total offense level of 19 and a Guidelines range of 30 to 37 months' imprisonment.  *Id.* at 15-16.

Subsequently, at the defendant's originally scheduled sentencing proceeding on July 21, 2022, the Court requested that the parties address whether a defendant's "use of a deadly or dangerous weapon," as required by 18 U.S.C. § 111(b), is coterminous with the enhancement pursuant to U.S.S.G. § 2A2.2(b)(2)(B) that applies when a defendant "otherwise use[s]" a dangerous weapon.   Transcript of July 21, 2022 hearing at 6.

---

[2] Following the defendant's objection, the Probation Office removed this enhancement from the final PSR.

[3] The defendant also argued the 2-point enhancement pursuant to U.S.S.G. § 2A2.2(b)(1) (more than minimal planning) did not apply.   The Government addressed this argument in its sentencing submission.  *See* ECF No. 46 at 51-52.

**ARGUMENT**

The defendant argues that because he claims to have intended to use a PVC pole to <u>disarm</u> Sgt. K.K., and not to hurt him, the pole was not a "dangerous weapon" and therefore the defendant's use of the pole to assault Sgt. K.K. does not warrant a four-point enhancement under U.S.S.G. § 2A2.2(b)(2)(B).   The defendant is wrong.   His conduct clearly demonstrated his use of the pole in a way that could cause bodily injury and his intention to do so; his professed additional motivation does not mitigate that.

**A.  Applicable Law**

A defendant is guilty of violating 18 U.S.C. § 111(a) if he (1) assaulted, resisted, opposed, impeded, intimidated, or interfered with, (2) a federal officer, (3) engaged in or on account of the performance of the officer's official duties, and (4) did so forcibly.   *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002).   The defendant must also intend to do the acts outlined above. *Id.*   A defendant additionally violates 18 U.S.C. § 111(b) if he "uses a deadly or dangerous weapon" or "inflicts bodily injury" in the course of violating § 111(a).   *Id.*   For purposes of Section 111(b), when the object used in the commission of the offense is not "inherently deadly," "the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner."   *Id.* at 45.   While the defendant must also intend to use the weapon – purely accidental use is not sufficient – there is no requirement that the Government prove that the defendant intended to use the object *as a weapon*, if he in actuality does so.   *Id.* at 45-46.

Pursuant to U.S.S.G. § 2A2.2(b)(2), various enhancements apply to a defendant's offense level if a firearm or dangerous weapon is employed in the commission of the offense.   If a defendant brandished a dangerous weapon or threatened its use, three points are added.   U.S.S.G.

§ 2A2.2(b)(2)(C).   If a defendant "otherwise used" a firearm or dangerous weapon, four points are added.   U.S.S.G. § 2A2.2(b)(2)(B).   The Guidelines contain the following definitions:

- "'Dangerous weapon' means (i) an instrument capable of inflicting death or serious bodily injury or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument. . . ."   U.S.S.G. § 1B1.1 cmt. n. 1(E).

- "'Brandished' with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person."   U.S.S.G. § 1B1.1 cmt. n. 1(C).

- "'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon."   U.S.S.G. § 1B1.1 cmt. n. 1(J).

- "'Dangerous weapon' has the meaning given that term in § 1B1.1, Application Note 1, and includes any instrument that is not ordinarily used as a weapon (*e.g.*, a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury."   U.S.S.G. § 2A2.2 cmt. n. 1.

## B. Discussion

### 1. Denney's Conduct Demonstrates That He Intended to Injure Sgt. K.K. in Swinging a Pole at Him.

Whatever Denney's professed motivation was in swinging a pole at Sgt. K.K., his conduct

demonstrates that he intended to inflict bodily injury.    As a preliminary matter, Denney's asserted goal (to disarm Sgt. K.K.) is not at odds with the intent to commit bodily injury, and, unlike a defendant whose motivation is to frighten a victim, is in fact entirely consistent with an intent to injure.    Indeed, it is difficult to conceive of how one would go about disarming a police officer, who is lawfully authorized to carry a firearm and other weapons and—circumstances permitting— to use deadly force, without intending in some form to inflict injury on that officer.    That is all the more so true here, where Denney's action to purportedly "disarm" Sgt. K.K. was to swing a long, hard pole – an item indubitably capable of causing bodily injury – at the officer's face, head, and torso.    Assuming that Denney did so in an attempt to relieve Sgt. K.K. of his crowd-control spray that he was holding in his hands (leaving Sgt K.K. and his fellow officers more vulnerable to attack by the mob of rioters), this method of disarming the officer necessarily risks causing injury to the officer.    *Cf. United States v. Jones,* 332 F.3d 1294, 1307 (10th Cir. 2003) ("Nothing in section[] . . . 2A2.2 (aggravated assault), or 1B1.1 (defining "otherwise used") requires that the defendant have the specific intent to use the dangerous weapon; rather, the Guidelines simply suggest that the instrumentality must be used in such a way that it presents a high risk of inflicting injury").

Further, Denney's claim regarding his intent in assaulting Sgt. K.K. is not credible.    His intent is clear from his actions and surrounding circumstances.    *See United States v. Goodbear*, 676 F.3d 904, 910 (9th Cir. 2012) (the defendant's "argument that [he] did not intend to injure [the victim] is belied by [the victim's] death."); *United States v. Ortegon*, 45 F. App'x 318, 2002 WL 1860281, at *1 (5th Cir. 2002) ("The intent to do bodily harm is not measured by the actor's subjective motivation. It is measured objectively, by what one in the victim's position might reasonably conclude from the actor's conduct." (internal citations omitted)); *cf. United States v.*

*Valdez-Torres*, 108 F.3d 385, 388 (D.C. Cir. 1997) (district court's finding that defendant intended to injure the officer-victim when the defendant accelerated his car towards the officer, based on the officer's opinion and the circumstances of the assault, was not clearly erroneous, despite defendant's assertion that he intended "only to escape or, at worst, to frighten [the officer], not to injure him"); *United States v. Garcia*, 34 F.3d 6, 11 (1st Cir. 1994) (despite defendant's assertion that he "drove at the agent" in an attempt to flee, but intended only to scare the agent not to hit him, the circumstances of the assault "certainly supported the inference that [the defendant] intended to cause serious bodily harm").

It is clear from the video footage of Denney's assault that he intended to strike and injure Sgt. K.K.   Denney swung a hard pole, from above, at Sgt. K.K's head, face, and torso.   *See* Government Sentencing Exhibit 15 at 02:22-02:25; Exhibit 16 at 00:27-00:37.   The pole did not directly strike Sgt. K.K. only because it fell short, both of his face and of the crowd-control spray he was holding in his hands.   *See* Exhibit 15 at 02:22-02:25; Exhibit 16 at 00:27-00:37; Exhibit 17 at 00:20-00:23.   And, from Sgt. K.K.'s perspective, Denney was wielding the pole in an attempt to injure him.   *See* Transcript of July 21, 2022 hearing at 34 ("Unfortunately, the actions of the defendant are one of which play on television from time to time and remind me of that day. I am reminded of the feeling that this gentleman *was trying to gouge my face and my eyes out with his pole*.") (emphasis added) *id.* ("I remember from my recollection that day that this pole was headed for my face and not for my crowd control device that he tried to take from me earlier on.").

Sgt. K.K.'s recollection, based on a few minutes of interaction with Denney, is borne out by Denney's assaultive, violent, and antagonizing conduct over the course of more than an hour and a half on January 6, 2021.   In the hour preceding his assault on Sgt. K.K., Denney attempted to pull barricades away from the officers manning them, ECF No. 60-1 at ¶¶ 52-53, sprayed pepper

spray at police officers, *id.* at ¶¶ 55, 57, and physically grappled with an officer who was trying to back him away from the police line, *id.* at ¶ 56.   And, in the minute after Denney attempted to grab Sgt K.K.'s crowd control spray and then swung a pole at him, *id.* at ¶¶ 58-59, Denney threw yet another object – a large cardboard tube that required two people to launch – in the direction of police officers, *id.* at ¶ 60.   Those violent actions make clear that Denney through his actions on January 6th intended harm to the officers who sought to protect the Capitol—including Sgt. K.K.

### 2. Though Guidelines Section 2.2A2(b)(2)(B) Does Not Require that the Defendant Specifically Intend to Commit Bodily Injury, This Court Need Not Decide That Question Here.

Because Denney's conduct swinging a pole at Sgt. K.K. evinced the intent to inflict harm on the officer, this Court need not decide whether intent to cause bodily injury is required to apply the four-level enhancement under U.S.S.G. § 2A2.2(b)(2).   In any event, no such intent requirement exists.

The Guidelines contemplate that items other than traditional weapons are included in the definition of "dangerous weapon," if they can be used in a way that that could cause death or serious bodily injury.   *See* U.S.S.G. § 1B1.1 n 1(E).   Here, the PVC pole that Denney swung at Sgt. K.K. was clearly a "dangerous weapon" under U.S.S.G. § 1B1.1 cmt. n. 1(E)(i):   The pole, while bendable, was hard, and thick enough to be swung with force without breaking.   And, although Denney did not succeed in hitting Sgt. K.K., he used the pole in such a way that it was capable of inflicting serious injury, swinging the pole at Sgt. K.K.'s face, head, and torso.   Sgt. K.K. was not significantly injured by the pole not because the pole was incapable of causing injury, but because Denney missed him.

The definition of "dangerous weapon" contained in Application Note 1 of U.S.S.G. § 2A2.2 does not add additional requirements for an item to be considered a dangerous weapon.

That section specifically references Section 1B1.1's definition of a "dangerous weapon," adopts that definition, and underscores that items other than inherent deadly or dangerous objects can be used in such a way that makes them dangerous weapons.   The note's reference to the use of the item "with the intent to commit bodily injury" is but an example of items included in the definition. *See* U.S.S.G. § 1B1.1 cmt. n. 2 ("The term 'includes' is not exhaustive").   It does not exclude a set of otherwise dangerous weapons on the grounds that the defendant lacked the subjective intent to injure when he utilized them.

Such a carve-out would lead to illogical results.   For example, it would impose an additional requirement on the Guidelines' definition of "brandish," which already contains its own *mens rea* requirement.   *See* U.S.S.G. § 1B1.1 cmt. n. 1(C) ("'Brandished' . . . means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, *in order to intimidate that person*") (emphasis added).   Thus, under the interpretation urged by Denney, a defendant who brandished a dangerous weapon or threatened to use a dangerous weapon would *also* have to intend to commit bodily injury in order to receive an enhancement pursuant to U.S.S.G. § 2A2.2(b)(2)(C).   And it would mean that the enhancement under U.S.S.G. § 2A2.2(b)(2)(B) would not apply to a defendant who *succeeded* in injuring a victim using an instrument capable of inflicting serious bodily injury, unless the defendant intended to inflict such injury.[4]

---

[4] The Ninth Circuit requires that, in order to trigger the application of § 2A2.2(b)(2)(B), the sentencing court must find the defendant intended to cause injury with the dangerous weapon. *United States v. Dayea*, 32 F.3d 1377, 1381 (9th Cir. 1994).   In *Dayea*, the court reasoned that conduct that warrants the application of § 2A2.2(b)(2)(B) ("otherwise us[ing]" "a dangerous weapon") must be more serious or dangerous than conduct that warrants the application of § 2A2.2(b)(2)(C) ("brandishing" or "threatening" the use of a "dangerous weapon").   *See id.*   ("It would not be rational, in light of the guideline's escalating levels of culpability, to do away with the requirement of intent for . . .  subsection [(B)], which carries a four-level increase, while retaining it for subsection (C), which carries only a three-level increase.")   However, this

The history of U.S.S.G. § 2A2.2 further confirms this sensible reading. The Sentencing Commission amended § 2A2.2 in 2001 to include the instruction, currently located in Application Note 3, that "[i]n a case involving a dangerous weapon with intent to cause bodily injury, the court shall apply both the base offense level and subsection (b)(2)." U.S.S.G. § 2A2.2 app. C. amend. 614 (Nov. 2001). The Commission included this language to clarify in light of a circuit conflict that it was not impermissible double counting to apply § 2A2.2(b)(2)(B) in the subset of cases where § 2A2.2 is applied because the assault involved "a dangerous weapon with intent to cause bodily injury." U.S.S.G. § 2A2.2 cmt. n.1; *see* U.S.S.G. § 2A2.2, app. C amend. 614 (Nov. 2001); *United States v. Duke*, 870 F.3d 397 (6th Cir. 2017); Fed. Sent. L. & Prac. § 2A2.2 (2022 ed.). The Commission explained that "[a]n assault that involves the presence of a dangerous weapon is aggravated in form when presence of the dangerous weapon is coupled with the intent to cause bodily injury. In such a case, the base offense level and the weapon enhancement in subsection (b)(2) take into account different aspects of the offense, even if application of the base offense level and the weapon enhancement is based on the same conduct." U.S.S.G. § 2A2.2 cmt. background; U.S.S.G. § 2A2.2 app. C. amend. 614 (Nov. 2001). This history further shows that the introduction of Application Note 3 was not meant to create an intent requirement when applying U.S.S.G. § 2A2.2(b)(2)(B). Rather, it was introduced to permit the application of both the base offense level under § 2A2.2 and the § 2A2.2(b)(2)(B) adjustment in the subset of aggravated assault cases involving a dangerous weapon with intent to cause bodily injury. *See* § 2A2.2 cmt. n.1 (defining aggravated assault as, *inter alia*, a felonious assault that involved a

---

reasoning ignores the Guidelines' directive that to "otherwise use" a "dangerous weapon" the defendant must do "more than brandish[], display[], or possess[]" the weapon, U.S.S.G. § 1B1.1 n. 1(J), and that the definition of "dangerous weapon" applies to *both* subsection (B) and subsection (C), U.S.S.G. § 2A2.2 cmt. n. 1.

dangerous weapon with intent to cause bodily injury).

## CONCLUSION

For the reasons stated above, the Court should apply a four-point enhancement to Denney's

base offense level, pursuant to U.S.S.G. § 2A2.2(b)(2).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By:    */s/ Benet J. Kearney*
        BENET J. KEARNEY
        NY Bar No. 4474048
        Assistant United States Attorney
        1 Saint Andrew's Plaza
        New York, New York 10007
        (212) 637 2260
        Benet.Kearney@usdoj.gov

        JENNIFER M. ROZZONI
        NM Bar No. 14703
        203 3rd Street, Suite 900
        Albuquerque, New Mexico 87101
        Jennifer.M.Rozzoni@usdoj.gov
        (505) 350 6818