**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 22-cr-70-RDM** |
| **LUCAS DENNEY,** | |
| **Defendant.** | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental memorandum in connection with the above-captioned matter to apprise the Court of other sentences that have been imposed in connection with cases arising out of the January 6, 2021 breach of the U.S. Capitol.

**I.    OTHER SENTENCES IMPOSED**

In addition to the defendants discussed in the Government's July 7, 2022 sentencing memorandum (ECF No. 46), several additional Capitol Riot defendants have been sentenced for assaulting law enforcement officers on January 6, 2021:[1]

*United States v. Rubenacker*, 21-cr-193 (BAH).   Rubenacker was one of the first rioters to breach the Capitol building, first entering via the Senate Wing Doors on the west side of the building.   He and a group of rioters chased an officer through the building.   Rubenacker exited the building, but subsequently reentered at a different location on the east side, smoked what

---

[1] Attached to this supplemental sentencing memorandum as Exhibit A is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

appeared to be marijuana, and, as officers attempted to clear the Rotunda, refused to leave, confronted multiple officers, and swung a water bottle at one officer's head and threw liquid at others. Rubenacker pled guilty to ten counts: violations of 18 U.S.C. §§ 231(a)(3), 1512(c), 111(a)(1), 1752(a)(1), 1752(a)(2), 1752(a)(4), and 40 U.S.C. §§ 5104(e)(2)(E), 5104(e)(2)(F), and 5104(e)(2)(G). In that case, the Court determined that the defendant's total offense level was 22 and criminal history category was I, resulting in a Guidelines range of 41 to 51 months' imprisonment. The Government recommended a sentence of 46 months' imprisonment. The Court imposed a 41-month sentence.

*United States v. Leffingwell*, 21-cr-5 (ABJ). Leffingwell, a veteran on disability due to a combat injury, entered the Capitol building via the Senate Wing Doors, approximately two hours after they had been initially breached. Leffingwell chanted at police officers who were attempting to keep additional rioters from entering the building and called for other rioters to stand their ground against the officers' commands to back up. As the officers began pressing on the crowd to back them out of the doors, Leffingwell swung at them, punching two officers in the head. Leffingwell was arrested on scene. Leffingwell pled guilty to one count: a violation of 18 U.S.C. § 111(a). In that case, consistent with the parties' plea agreement, the Court determined that the defendant's total offense level was 17 and criminal history category was I, resulting in a Guidelines range of 24 to 30 months' imprisonment. The Government recommended a sentence of 27 months' imprisonment. The Court imposed a 6-month sentence.

*United States v. Ponder*, 21-cr-259 (TSC). On three separate occasions, Ponder swung a pole at law enforcement officers on the West Plaza of the U.S. Capitol building and the Upper West Terrace of the building, striking two officers' shields and hitting a third officer in the

2

shoulder.   Officers arrested and restrained Ponder; while he was being transported to another area of the Capitol grounds, Ponder encouraged fellow rioters, shouting "Hold the line!" and "Do not give up!"   The officers eventually released Ponder with instructions to leave the Capitol grounds and not return, but Ponder made his way back to the Lower West Terrace ("LWT"), where he was captured on surveillance footage positioned up against the police line, holding a police riot shield. Ponder pled guilty to one count: a violation of 18 U.S.C. § 111(a) and (b).   In that case, consistent with the parties' plea agreement, the Court determined that the defendant's total offense level was 23 and criminal history category was III, resulting in a Guidelines range of 57-71 months' imprisonment.   The Government recommended a sentence of 60 months' imprisonment.   The Court imposed a 63-month sentence.

*United States v. Willden*, 21-cr-423 (RC).   Willden, a self-professed member of the Proud Boy organization, breached the Capitol building from the east side twice.   Willden filmed and celebrated other rioters during the first breach.   During the second, Willden sprayed a chemical irritant at officers guarding the doors, then threw the cannister at them.   Willden then entered the building and remained there for at least 15 minutes.   Willden pled guilty to one count: a violation of 18 U.S.C. § 111(a).   In that case, consistent with the parties' plea agreement, the Court determined that the defendant's total offense level was 17 and criminal history category was I, resulting in a Guidelines range of 24-30 months' imprisonment.   The Government recommended a sentence of 30 months' imprisonment.   The Court imposed a 24-month sentence.

*United States v. Mault and Mattice*, 21-cr-657 (BAH).   Prior to January 6, 2021, Mault and Mattice discussed bringing various supplies to Washington, D.C.   In particular, Mault informed Mattice that he had bought pepper spray and a baton and suggested that others also bring

gloves, "asskicking boots," and protective gear.   Mattice stated that he had a high-powered fire extinguisher to repel crowds from their vehicle and would be wearing additional clothing layers for protection.   In the early afternoon of January 6, 2021, Mattice recorded videos in which he announced his intention to engage in violence.   Later, Mattice pulled down a metal barricade on the West Plaza, and he and Mault were amongst the rioters who breached the police line there. They then joined the mob of rioters on the LWT and each sprayed a chemical substance – cannisters of which they obtained from other rioters – at law enforcement officers in the passageway leading from the LWT to the interior of the Capitol building (the "Tunnel").   Mault and Mattice each pled guilty to one count: a violation of 18 U.S.C. § 111(a).   Pursuant to plea agreements, the parties stipulated that Mault and Mattice's offense level was 21 and criminal history category was I, resulting in a Guidelines range of 37 to 46 months' imprisonment.   The Government recommended a sentence of 44 months' imprisonment for each defendant.   The Court imposed a 44-month sentence on each defendant.

*United States v. Richardson*, 21-cr-721 (CKK).   Richardson used a flagpole to strike an MPD officer on the West Plaza of the Capitol building three times.   Less than two minutes later, Richardson joined a crowd of rioters in shoving a large metal billboard at the line of police officers and breaking through a portion of the metal barricades.   Richardson pled guilty to one count: a violation of 18 U.S.C. § 111(a).   In that case, consistent with the parties' plea agreement, the Court determined that the defendant's total offense level was 21 and criminal history category was I, resulting in a Guidelines range of 37 to 46 months' imprisonment.   The Government recommended a sentence of 46 months' imprisonment.   The Court imposed a 46-month sentence.

*United States v. Webster*, 21-cr-208 (APM).   Webster, a former United States Marine and

retired New York City Police Department officer, brought a bulletproof vest, a firearm, and food provisions with him to Washington, D.C. on January 5, 2021.   On January 6, 2021, he wore he bulletproof vest and carried a metal flagpole to the Capitol grounds.   On the West Plaza, he elbowed his way through the crowd until he got to the front of the mob and began yelling at an officer stationed behind a metal barricade.   When the officer tried to swat Webster's hand away, Webster continued to yell, then pushed against the barricade, prompting the officer to shove him back.   Webster than brought the flagpole down repeatedly on the barricade in front of the officer, causing it to break, then charged the officer, tackled him to the ground, and attempted to rip off his gas mask.   Webster subsequently went to the LWT, where he witnessed the assault on Officer M.F.   At trial, Webster was convicted of six counts: violations of 18 U.S.C. §§ 111(a) and (b), 231(a)(3), 1752(a)(1) and (b)(1)(A), 1752(a)(2) and (b)(1)(A), 1754(a)(4) and (b)(1)(A) and 40 U.S.C. § 5104(e)(2)(G).   In that case, the Court determined that the defendant's total offense level was 37 and criminal history category was I, resulting in a Guidelines range of 210 to 240 months' imprisonment.[2]   The Government recommended a sentence of 210 months' imprisonment.   The Court imposed a 120-month sentence.

As with the defendants discussed in the Government's July 7 memorandum, Denney shares similarities with many of the defendants described above:   He is a veteran and former law enforcement officer (Leffingwell, Webster).   He discussed bringing and brought protective gear and weapons to Washington, D.C. (Mault, Mattice) and wore body armor on January 6 (Webster).   He spent a considerable amount of time on the Capitol grounds, taunting and assaulting officers

---

[2]  Webster's range of 210-262 months was capped by the 20-year statutory maximum sentence for a violation of 18 U.S.C. § 111(a) and (b).

and attempting to breach barricades on the West Plaza (Ponder, Willden, Mault, Mattice, Richardson), before engaging in assaultive conduct on the LWT (Ponder, Mault, Mattice).   He deployed chemical spray against police officers (Mault, Mattice, Willden) and used objects to strike them (Ponder, Richardson, Webster).   But, while all of these defendants' conduct was reprehensible Denney's criminal conduct was more extensive.   He undertook a significant level of planning and preparation for January 6, 2021, including fundraising, recruiting others to take up arms with him, and procuring weapons and protective gear for himself and others.   And he engaged in repeated instances of assaultive conduct, in several locations on the Capitol grounds, over the course of more than an hour and a half.

For example, while Webster's Guidelines range (210-240 months) was higher than Denney's, his offense level was significantly increased by his lack of acceptance of responsibility and obstruction of justice, evidenced by, among other things his testimony at trial and his attempt to delete evidence from his phone.[3]   Webster spent at least eight minutes working his way to the front of the mob of rioters, then targeted and assaulted Officer Rathburn over the course of a few minutes.   *See United States v. Webster*, 21-cr-208 (APM), ECF No. 104 (Govt. Sent. Mem.) at 16-24.   Here, Denney's assault of Sgt. K.K. lasted less than two minutes.   By the time Denney committed that assault, however, he had already attempted to breach metal barricades three times, sprayed police officers with a chemical irritant (likely the pepper spray he procured in advance of the riot) on two occasions, and grabbed an officer's baton and engaged in a tug-of-war, shoving

---

[3]  Although Denney deactivated his Facebook account shortly after January 6, 2021 and made disingenuous statements to FBI agents when interviewed, the Government is not seeking a 2-point enhancement pursuant to U.S.S.G. § 3C1.1 in his case.

the officer backwards.[4]    Denney went on to enter the Tunnel on the LWT, push a riot shield into

and on top of the line of police officers positioned there, including Officer M.F., and, once he

exited the Tunnel, swing his arm and fist at Officer M.F., who has been dragged into the mob of

rioters.    Similarly, while the frequency of Ponder's assaults is closer to Denney's, Ponder did not

demonstrate a similar level of premeditation (nor did he don body armor).

## II.    RECOMMENDATION

The draft pre-sentence investigation report ("PSR") (ECF No. 40) was prepared on May 5,

2022 and calculated Denney's offense level as 29 and criminal history level at I, resulting in a

Guidelines range of 87-108 months' imprisonment.    That calculation included a 4-point

enhancement pursuant to U.S.S.G. § 3B1.5(2)(B) for use of body armor during the commission of

a crime of violence.    *See* ECF 40 at ¶ 63.    The Government filed its sentencing memorandum on

July 7, 2022.    The final PSR was filed on July 14, 2022, and, following Denney's objection, did

not contain the § 3B1.5 enhancement, resulting in an offense level of 25 and a Guidelines range of

57-71 months' imprisonment.    The Government maintains that, as discussed in its July 7, 2022

sentencing memorandum, the 4-point enhancement under U.S.S.G. § 3B1.5 is applicable.    The

Government recommends that the Court sentence defendant Lucas Denney to a term of

incarceration in the middle of the guideline range as calculated in its sentencing memorandum

(ECF No. 46), three years of supervised release, restitution in an amount to be determined at a later

---

[4] The Government has also identified additional video footage and a still image of Denney on
the West Plaza.    Neither is timestamped, but based on a comparison to Exhibit 12, the events
appear to occur at approximately 2:09 p.m., immediately prior to Denney being sprayed with
crowd-control spray.    *See* ECF No. 46 at 28.    In that footage and image, Denney is punching
the face shield of a police officer. The image is attached as Exhibit 26.    The Government will
provide the video footage to the Court and the defendant as Exhibit 27.

time, and the mandatory $100 special assessment for the count of conviction.

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY

BY:    */s/ Benet J. Kearney*
                Jennifer M. Rozzoni
                NM Bar No. 14703
                Benet J. Kearney
                NY Bar No. 4774048
                Assistant United States Attorneys
                601 D Street, N.W.
                Washington, D.C. 20530
                (505) 350-6818 / (212) 637-2260
                Jennifer.M.Rozzoni@usdoj.gov
                Benet.Kearney@usdoj.gov