**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 22-cr-070 (RDM)** |
| **LUCAS DENNEY,** | |
| **Defendant.** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS FOR RELEASE
AND TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Lucas Denney's Request for Immediate Release from Custody (ECF No. 85) and Motion to Vacate, Set Aside, or Correct His Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 87).[1]  Denney's motions largely focus on the period of time that elapsed between his arrest in the Western District of Texas and his initial appearance in the District of Columbia, which exceeded the 30-day limit set forth in 18 U.S.C. § 3161(b), contending that this violation is grounds to vacate his sentence and warrants his immediate release.  He also alleges that he was questioned by the FBI without his counsel present and suggests that he entered a guilty plea despite his innocence on advice of counsel.  None of these claims have merit.  The motions should be denied.

---

[1] Denney also moves for the return of property that was seized by the FBI in connection with his arrest and search warrants that were executed at his residence and a storage locker.  The FBI is currently working with Denney's former counsel to obtain Denney's permission to release this property to a family member.

## BACKGROUND

For weeks leading up to the January 6, 2021 attack on the United States Capitol, Denney a former military police officer and the self-declared President of a militia group called the Patriot Boys of North Texas ("PBONT"), gathered protective gear and weapons, recruited others to join him, and fundraised for his and his associates' equipment and travel expenses.  Upon arriving on the Capitol grounds on January 6, engaged in an extended course of violence: Over the course of an hour, he joined the storming of the police lines on the West Plaza and Northwest Staircase, grabbed at the barricades separating rioters from police, deployed pepper spray in the direction of police officers on at least two occasions, attempted to disarm an officer who was deploying crowd control spray, swung a PVC pole towards that officer's head and torso, then launched a large tube at the area where the officer had stood.  He then made his way to the Lower West Terrace of the Capitol building, where he joined in the mob's efforts to push their way through a line of police officers, including by pushing a riot shield into the officers, and shortly thereafter, swung at a police officer who had been separated from the police line and was surrounded by rioters.

On December 7, 2021, Denney and his co-defendant, Donald Hazard, were charged by complaint with various offenses, including, in Denney's case, Assaulting, Resisting, or Impeding Certain Officers with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); Obstructing or Impeded Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Obstructing an Official Proceeding and Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k).  ECF No. 1-1.  Denney was arrested on December 13, 2021 in the Western District of Texas.  ECF No. 5.  Following his arrest, FBI agents advised him of his *Miranda* rights and Denney signed a form indicating that he understood those rights.  Agents then conducted an interview of Denney.  At one point in the

questioning, Denney indicated that he wanted a lawyer before answering a particular question. Later in the interview, Denney stated that he wanted a lawyer; questioning then ceased.

Magistrate Judge Collis White in the Western District of Texas conducted Denney's initial appearance pursuant to Rule 5(c)(3) on December 14, 2021. ECF No. 27-1 (Docket Entry 2).  On December 17, 2021, Magistrate Judge Collis conducted a detention hearing, ordered that Denney be detained, and ordered that the United States Marshals Service transport Denney to the District of Columbia. *Id.* (Docket Entries 5, 6, 7); ECF Nos. 27-2, 27-3.

Between December 21, 2021 and January 4, 2022, the government made several requests to schedule an initial appearance in the District of Columbia for Denney, but the court was unable to get in touch with the facility at which he was housed.  *See* ECF Nos. 27 at 2-3, 27-5, 27-6, 27-7, 27-8.  On February 1, 2022, the United States Marshals Service notified the government that Denney had arrived at Northern Neck Regional Jail on January 31, 2022.  *See* ECF Nos. 27 at 3, 27-9.  Between February 4, 2022 and February 23, 2022, Denney's counsel and counsel for the government made additional attempts to schedule an initial appearance for Denney.  *See* ECF Nos. 27 at 3-4, 27-10, 27-11, 27-12, 27-13.  On February 25, 2022, Denney's appearance was scheduled for March 10, 2022.  Feb. 25, 2022 Minute Entry.

In advance of the March 10 appearance, Denney's counsel filed a motion for release from custody in light of the more than 30 days that had elapsed since his arrest, followed by a motion to dismiss the complaint pursuant to 18 U.S.C. § 3162(a)(1).  ECF Nos. 20, 23.  The government initially opposed the motion for release, ECF No. 21, but later conceded that the Speedy Trial Act, 18 U.S.C. § 3161, had been violated and the complaint should be dismissed, and argued that and dismissal should be without prejudice, ECF No. 27.  On March 7, 2022, a grand jury returned a one-count indictment (the "Indictment") charging Denney with Assaulting, Resisting, or Impeding

Certain Officers with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b). ECF No. 25.  That same day, a conference was conducted in front of Magistrate Judge Zia M. Faruqui in the District of Columbia regarding Denney's pending motions.  Denney was present in-person in the courtroom, along with one of his attorneys; other counsel appeared virtually.  ECF No. 38 at 4.  In light of the Indictment, Magistrate Judge Faruqui denied the motion for release and set a briefing schedule regarding whether the charges should be dismissed with or without prejudice.  ECF No. 38 at 17, 32-37; Mar. 8, 2022 Minute Order.

The case was then assigned to this Court.  On March 14, 2022, a virtual status conference was conducted at which Denney's counsel indicated that Denney wished to plead guilty to the Indictment, without a plea agreement.  Mar. 14, 2022 Minute Entry.  On March 16, 2022, Denney withdrew his motion for release from custody and to dismiss the case.  ECF No. 32.

On March 17, 2022, this Court conducted a change of plea hearing at which it ensured that Denney was entering a guilty plea voluntarily, intelligently and knowingly.  Denney and one of his attorneys appeared in-person, while his other attorney and government counsel appeared virtually.  At the hearing, Denney consented, through counsel, to the hybrid proceeding.  ECF No. 55 at 2.  After arraigning Denney on the Indictment, the Court inquired regarding the status of his motion to dismiss, *id.* at 3, and regarding Denney's position on any objections to the timeliness of the Indictment under the Speedy Trial Act, *id.* at 4.  After counsel confirmed that Denney was waiving those objections, the Court asked Denney directly:

> **THE COURT:**   So Mr. Denney, do you understand that under the Speedy Trial Act, the Government is required to return an indictment within a certain number of days; and in this case, I think the Government concedes that it failed to return the indictment within the period of time specified in the Speedy Trial Act?

| | |
|---|---|
| **THE DEFENDANT:** | Yes, Your Honor, I do. |
| **THE COURT:** | You understand that? |
| **THE DEFENDANT:** | Yes, sir. |
| **THE COURT:** | And do you understand that your lawyers could seek dismissal of the indictment, and that could be dismissal with or without prejudice, and that that would be a question for the Court to decide? |
| **THE DEFENDANT:** | Yes, sir, I knew that. |
| **THE COURT:** | And have you had adequate time to talk with your lawyers, plural, about whether you should waive any right you might have under the Speedy Trial Act with respect to the timeliness of the indictment? |
| **THE DEFENDANT:** | Yes, sir. |
| **THE COURT:** | Okay. And based on the discussions that you've had with your lawyers, do you knowingly and voluntarily waive whatever objections you might have or rights you might have under the Speedy Trial Act with respect to the timeliness of the indictment? |
| **THE DEFENDANT:** | Yes, sir. |

*Id.* at 5-6.  The Court also asked counsel whether he "fe[lt] as though that Mr. Denney understands his rights, and he's in a position to make a knowing and voluntary decision with respect to whether to waive those rights."  Counsel confirmed that he and Denney had discussed the matter "over a period of hours" and that Denney was "well aware of what the requirements were and what the facts are."  *Id.* at 6.

The Court then placed Denney under oath, ECF 55 at 6, and began to question Denney to determine if his decision to enter a plea of guilty was "knowing and voluntary and informed."  *Id.* at 7.  In response to an inquiry by the Court, the government confirmed that it had not yet made a

decision regarding whether to pursue additional charges beyond the one count of the Indictment then-pending against Denney. *Id.* at 8.  The Court then engaged in the following colloquy with Denney:

| | |
|---|---|
| **THE COURT:** | So Mr. Denney, do you understand that as we sit here today, we don't know whether the Government will bring additional charges against you? |
| **THE DEFENDANT:** | I didn't know that. |
| **THE COURT:** | But do you understand that? So by pleading -- do you understand that by pleading guilty to the indictment today, that doesn't necessarily preclude the Government from bringing other charges against you? Do you understand that? |
| **THE DEFENDANT:** | I did not know that. |
| **THE COURT:** | You did -- I'm sorry? |
| **THE DEFENDANT:** | I didn't know that really, no. No, sir. If I can talk to [my attorneys]. |
| **THE COURT:** | Well, I'm telling you today that there may be some defenses -- or various defenses you might have, and it's possible that as to some charges the Government might bring, you might have a double jeopardy defense. But it's also possible that as to other charges that they might bring, you wouldn't have that. And so by entering a plea of guilty here today, I just want to make sure that you understand that it may be, and it's possible, that the Government is going to still bring other charges against you. |
| | In the usual course, the way it would work is the Government would sort of make more of a complete decision about whether it was bringing charges. And if there was a plea bargain, the plea bargain would outline in it what charges the Government can bring in the future and what charges the Government can't bring in the future. And because you're pleading guilty to the |

indictment today without a plea bargain agreement, you don't have any guarantees that the Government will not pursue additional charges against you.

Do you understand that?

**THE DEFENDANT:**   I'm understanding what you're telling me.

**THE COURT:**   I mean, that's obviously a big part -- a big issue for you here. If you'd like, I'm happy to pause things for a few minutes here and let you talk to Mr. Pierce and to Mr. Shipley. And we can find a place for you to talk privately with Mr. Shipley as well if you want to. But it's an important aspect of this, because the law is complicated with respect to what charges the Government can bring and which ones it can't bring after you enter a plea. But I think it's fair to say that there's a good likelihood there will be other charges, if the Government decided to, that it could still bring against you.

*Id.* at 8-10.  The Court then recessed for approximately fifteen minutes so the Denney could consult with his counsel privately.  *Id.* at 11.

Upon returning, the Court asked Denney if he had a chance to confer with his lawyers and if he had had enough time to do so.  Denney indicated that he had.  *Id.* at 11.  The Court then asked if Denney understood that "it is possible that the Government could bring other charges, including charges relating to events that occurred on January 6th, 2021," and that his guilty plea would not preclude the government from bringing additional charges, and Denney confirmed that he did.  *Id.* at 11-12.  The Court also confirmed that Denney understood that, even if the government did not bring additional charges, the Court could consider uncharged conduct in connection with sentencing.  *Id.* at 12.

Before accepting Denney's guilty plea, the Court conducted a thorough allocution that complied with Rule 11.  Denney confirmed that he was not under the influence of any substance

that could affect his ability to understand the proceeding and was not being treated for any condition that could affect his ability to make a knowing and voluntary decision. *Id.* at 15. He confirmed that he had received both the complaint and the Indictment, read them, and discussed the charges in the Indictment with his attorneys. *Id.* at 16. He also stated that he understood the charges, had had sufficient time to discuss his case and the decision to plead guilty with his attorneys, and was satisfied with his attorneys. *Id.* The Court explained the constitutional rights Denney would give up were he to plead guilty -- in addition to the waiver of his Speedy Trial argument -- and confirmed that he understood those rights, as well as the applicable penalties he faced. *Id.* at 17-19, 22-24, 28-38. The Court also reviewed the elements of 18 U.S.C. § 111(a) and (b) with Denney and established that he had committed each of them. *Id.* at 24-27. The Court then accepted Denney's plea, finding that Denney was "fully competent and capable of entering an informed plea," that he was "aware of the nature of the charges and the consequences of the plea," that "the plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact concerning each of the essential elements of the offense." *Id.* at 39.

On May 11, 2022, Denney, through counsel, filed a motion for release pending sentencing pursuant to 18 U.S.C. § 3143, citing (1) his family circumstances, (2) the Speedy Trial Act violations, and (3) the fact that the government had not sought detention for certain other defendants. ECF No. 42. After receiving additional briefing, the Court denied this motion, noting that "rather than pursue dismissal of the indictment, [Denney] elected to plead guilty, without the benefit of a plea agreement." ECF No. 45. Prior to sentencing, Denney never sought to withdraw from his plea.

On July 21, 2022, Denney's sentencing hearing commenced. Prior to sentencing, the parties filed sentencing memoranda. ECF Nos. 46, 50, 52. Denney's memorandum attached an

unsigned affidavit that was arguably inconsistent with his plea allocution, *see* ECF Nos. 50-1; 57 at 5, and so after hearing from three victims, the Court continued the sentencing to allow the parties to attempt to resolve certain factual and legal issues. ECF No. 57 at 13-14. On August 19, 2022, the parties submitted a Joint Statement of Offense in order to narrow the issues in dispute at Denney's sentencing. ECF No. 60. On September 21, 2022, the government filed a supplemental sentencing memorandum. ECF No. 67. In addition to providing the Court with a discussion of sentences imposed in other January 6 cases, the government informed the Court that it had identified additional footage of Denney on the West Plaza of the U.S. Capitol on January 6, 2021, which depicted Denney punching the face shield of a police officer – conduct that had not been recounted in the complaint. ECF No. 67 at 7 n.4.

On September 28, 2022, the Court resumed the sentencing hearing. After hearing argument from the parties, the Court calculated Denney's Sentencing Guidelines Range and applied two contested offense level enhancements -- (1) a 2-level enhancement pursuant to U.S.S.G. § 2A2.2(b)(1) for "more than minimal planning," and (4) a 4-level enhancement pursuant to U.S.S.G. § 2A2.2(b)(1) for "use of a dangerous weapon" – which resulted in an offense level of 25 and a Guidelines range of 57 to 71 months. ECF No. 78 at 9-32. The Court then heard extensive argument from the parties concerning the appropriate sentence, *id.* at 34-73, as well as a statement from Denney himself, *id.* at 73-76. The Court imposed a sentence of 52 months' imprisonment, followed by three years of supervised release, citing the "truly disturbing" nature of the offense, as well as Denney's status as a veteran, lack of criminal record, and family circumstances. *Id.* at 76-83. The Judgment was docketed on October 14, 2022, after the Court received additional briefing regarding restitution. ECF No. 75.

Denney filed a notice of appeal on October 31, 2022. Denney's appeal raised two arguments, both relating to the applicability of the Sentencing Guidelines enhancements discussed above. *United States v. Denney*, 22-3084, Corrected Appellant Brief, Sept. 12, 2023, at 6. The Circuit held oral argument on March 8, 2024 and on April 12, 2024 affirmed the Court's judgment. *United States v. Denney*, 98 F.4th 327 (D.D.C. 2024).

On July 31, 2024, the Clerk of Court received a motion from Denney requesting immediate release from custody (ECF No. 85, the "Release Motion"), which was docketed on August 12, 2024. On August 2, 2024, Denney's motion to vacate his sentence under 28 U.S.C. § 2255 (ECF No. 87, the "2255 Motion") was filed on the related civil docket. The 2255 Motion was filed on the criminal docket on August 23, 2024.

Denney's 2255 Motion lists six grounds that he claims support relief; however, the majority of his claims involve details from the same issue concerning the Speedy Trial Act, 18 U.S.C. § 3161. Denney's listed claims are as follows:

- Ground One: Denney was detained for more than 80 days following his arrest without a preliminary hearing, ECF 87 at 5;

- Ground Two: After Denney's arrest, FBI agents questioned him despite his request for counsel, ECF 87 at 6;

- Ground Three: Denney had no preliminary hearing and no indictment within the time required under the Speedy Trial Act, ECF 87 at 8;

- Ground Four: Ground Four appears to restate Ground Three but lists additional supporting documents, ECF 87 at 9;

- Ground Five: the Western District of Texas, where Denney was arrested, did not transmit Rule 5 documents to this Court, ECF 87 at 16; and

- <u>Ground Six</u>: Denney's indictment, conviction, and sentence occurred more than 30

  days after his arrest, ECF 87 at 16.

Other than the Release Motion's conclusory request for "the return of [Denney's] seized/confiscated property," ECF No. 85 at 1, and the assertion that he was "advised by [his] lawyer to plead guilty so that the prosecutions couldn't come back at me with more charges," ECF No. 86-2 at 5, the claims raised in the Release Motion – *i.e.,* that Denney did not receive a timely preliminary hearing and that the Indictment was unlawful -- are also addressed in the 2255 Motion. *See* ECF No. 85 at 3 ("For months, not days, I traveled around the country illegally . . . and continued to be held illegally for months."), *id.* ("The government had no indictment and knew it, and only when it was brought to their attention did they do a 'Hail Mary' to save themselves."), *id.* ("a (1) count indictment was 'shoved through' late in violation of the Speedy Trial and Bail Reform Acts"), ECF No. 85-2 at 5 ("I was questioned by the FBI in Del Rio, Texas over and over despite repeatedly saying 'Lawyer.'").

## <u>ARGUMENT</u>

### A.  Legal Standard for Section 2255 Motions

A defendant may move to vacate, set aside, or correct a sentence if he believes the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The relief contemplated by § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). "Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a Section

2255 motion." *Bedewi v. United States*, 583 F. Supp. 2d 72, 76 (D.D.C. 2008) (internal quotation marks omitted).

A defendant bears the burden of demonstrating that he is entitled to relief under § 2255. *See, e.g., United States v. Bell*, 65 F. Supp. 3d 229, 231 (D.D.C. 2014). It is "well-settled" that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992). A judgment challenged on collateral attack carries with it a "presumption of regularity," "even when the question is waiver of constitutional rights." *Daniels v. United States*, 532 U.S. 374, 381 (2001) (internal quotation marks omitted). In order to have a guilty plea set aside under § 2255, a defendant "must show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001) (internal quotation marks omitted).

### B. Release Pending Adjudication of a Section 2255 Motion

Title 18, United States Code, Section 3143(b) applies only to "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari," not to a prisoner seeking postconviction relief. *See Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985). Although a court's jurisdiction in a Section 2255 proceeding "includes an inherent power . . . to grant bail or release, pending determination of he merits," such a request will "ordinarily . . . be measured against a heightened standard requiring a showing of exceptional circumstances.'" *United States v. Kelly*, 790 F.2d 130, 139 (D.C. Cir 1986) (quoting *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969)). In addition to identifying "exceptional circumstances deserving of special treatment," the petitioner must show that "the

§ 2255 petition is based on a substantial claim of law." *See United States v. Stottlemyer*, No. 21-Cr-334 (TJK), 2024 WL 1076852, at *3 (D.D.C. Mar. 8, 2024); *Meskel v. United States*, No. 04-Cr-0053 (RMU), 2005 WL 1903375, at *2 (D.D.C. July 13, 2005); *see also United States v. Young*, 249 F. Supp. 3d 11, 13-14 (D.D.C. 2015) (quoting *United States v. Taylor*, 254 F.3d 1080, 1080 (5th Cir. 2001) ("Release pending disposition of a 28 U.S.C. § 2255 motion will be granted only when the petitioner has raised a substantial constitutional claim upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.")). This is a "stringent" standard. *Meskel*, 2005 WL 1903375, at *2 (quoting *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990)); *accord Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986) (when requesting bail pending collateral review, the defendant must show "a substantial federal constitutional claim that presents not merely a clear case on the law, but a clear, and readily evident, case on the facts"); *United States v. Roberts*, 250 F.3d 744 (5th Cir. 2001) (petitioner must raise "substantial constitutional claims upon which he has a high probability of success")."[T]he power to grant bail pending resolution of a § 2255 proceeding is to be exercised very sparingly." *Id.* at 139 (citing *Cherek*, 767 F.2d at 337). Very few defendants should be released under this analysis. *See Bruce v. United States*, 256 F. Supp. 28, 29 (D.D.C 1966) (court has inherent authority to admit § 2255 defendant to bail, but it should only be exercised when "exceptional circumstances" have been shown). Cases presenting exceptional circumstances "'are typically limited to situations involving the impending completion of short sentences or grave illness.'" *Stottlemyer*, 2024 WL 1076852 at *5 (quoting *Meskel*, 2005 WL 1903375 at *2); *see also Roberts*, 250 F.3d at 744 (explaining that exceptional circumstances include "serious deterioration of the petitioner's health while incarcerated, short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral

review truly effective, and extraordinary delay in processing a habeas petition").

**C. Denney's Claims Are Procedurally Barred.**

Denney's claims are procedurally defaulted because he never raised them in his direct appeal before seeking relief under Section 2255. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Where a defendant fails to appeal an alleged trial or sentencing error, he is procedurally barred from raising the claim in a later collateral attack unless he shows cause for his failure to do so and prejudice as a result of his failure. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal."); *United States v. Hicks*, 911 F.3d 623, 627 (D.C. Cir. 2018); *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003).

A defendant, however, may raise a claim for the first time in a § 2255 motion if he can show cause and prejudice for his failure to raise the issue on appeal. To establish cause, a defendant must demonstrate "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim," such as government interference or that the factual or legal basis for the claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation omitted). In addition, a defendant must show "'actual prejudice' resulting from the errors of which [he] complains." *Frady*, 456 U.S. at 168. That is, a defendant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170. A defendant "bears the burden of showing both" cause and actual prejudice. *Hicks*, 911 F.3d at 627.

Denney cannot meet this standard. A defendant can show cause where a claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of appeal. *Bousley*, 523 U.S. at 622 (*quoting Reed v. Ross*, 468 U.S. 1, 16 (1984)); *see also United States v. Sumner*, 597

14

F. Supp. 3d 120, 134–35 (D.D.C. 2022).  Here, Denney's Speedy Trial Act claim was clearly available to counsel, because counsel filed motions for release and dismissal of charges pursuant to that statute.  Denney's motion for release was denied, and rather than pursue his motion to dismiss, Denney chose instead to withdraw the motion, ECF No. 32, and enter a guilty plea.

Motions to suppress statements for failing to honor a request for counsel are not novel. Denney does not provide any grounds establishing cause to preserve any claim to suppress statements made to arresting agents.  He provides no reason to conclude that he would have succeeded on any such motion and does not even describe the content of any statements he made without counsel present.  Nor were any such statements used against him at trial.  His Section 2255 motion thus fails to show cause for or prejudice from his failure to appeal either his Speedy Trial Act claim or any claim for suppression of statements.

If Denney had an objection because the Western District of Texas did not promptly transmit Rule 5[2] documents to this district, he fails to show cause for his failure to raise such an objection either before this Court or as part of his direct appeal.  Similarly, Denney cannot show prejudice from the absence of such documents, because they were made part of the record in his case when they were attached as exhibits to a government response.  *See* ECF Nos. 27, 27-1 through 27-4. One of these attachments included the docket sheet for all proceedings in Denney's case in the Western District of Texas.  ECF No. 27-1.

Because Denney has not shown cause or prejudice, he has procedurally defaulted the claims he seeks to raise.  Accordingly, he is not entitled to relief.

---

[2] Fed.R.Crim.P. 5(c)(3) addresses procedures for defendants arrested outside of the district where the offense occurs, and provides that following such an arrest, "when the defendant is transferred and discharged, the clerk must promptly transmit the papers and any bail to the clerk of the district where the offense was allegedly committed."  Fed.R.Crim.P. 5(c)(3)(E).

**D. Denney's Knowing and Voluntary Guilty Plea Waived Any Objection to the Violation of the Speedy Trial Act and Any Alleged Violation of *Miranda*.**

"[A] voluntary plea of guilty waives all rights and defenses, known or unknown, present or future." *United States v. Fitzgerald*, 466 F.2d 377, 379 (D.C. Cir. 1972). *See also Smith v. United States*, 677 F.2d 39, 40–41 (8th Cir. 1982) ("a voluntary guilty plea effectively waives all nonjurisdictional defects" in prior proceedings concerning the defendant"); *Moore v. United States*, 425 F.2d 1290, 1291 (5th Cir. 1970) ("A plea of guilty knowingly and understandingly made is an admission of all facts alleged in the indictment or information and a waiver of all nonjurisdictional defenses."). Indeed, "when a prisoner pleads guilty to an offense, he thereby waives the significance of any irregularities in his arrest and previous restraint." *Adkins v. United States*, 298 F.2d 842, 844 (8th Cir. 1962). *See also Strowder v. Shovlin*, 272 F. Supp. 271, 273 (M.D. Pa. 1966) ("Unnecessary delay in scheduling a preliminary hearing is not, in itself, a ground for vacating a conviction based upon the defendant's voluntary plea of guilty in open Court."); *id.* (collecting cases). The same is true of alleged illegalities in the investigation underlying the defendant's charges or insufficiency of evidence. *See United States v. Zavada*, 291 F.2d 189, 191 (6th Cir. 1961) ("One who pleads guilty is not in a position to successfully move for vacation of judgment on claims of an alleged illegal search and seizure or lack of evidence to sustain a conviction."); *United States v. Dodd*, 828 F.Supp.2d 39, 42-43 (D.D.C. 2011) (in pleading guilty, defendant "waived any claim he may have had under the Fourth Amendment for any unlawful search or seizure").

A plea is knowing "when the defendant is competent, aware of the charges and advised by competent counsel." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). A plea is voluntary "when it is not induced by threats or misrepresentations, and the defendant is made

aware of the direct consequences of the plea." *Id.*; *see also Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.")

Here, Denney's guilty plea was undoubtedly knowing and voluntary.  At the change of plea hearing, the Court confirmed that Denney was competent, *see* ECF No. 55 at 14-16, that he was aware of the charges, *see id.* at 2-3, 8, 24-28, and that he had had sufficient time to discuss them with his attorneys, *see id.* at 16.  The Court also conducted a fulsome colloquy with Denney regarding not only the rights enumerated in Rule 11(b)(1), *id.* at 16-19, but also the consequences for any claim he might wish to bring under the Speedy Trial Act, *id.* at 4-6, and the potential for future charges, *id.* at 8-14.  The Court also advised Denney of the potential penalties he faced, *id.* at 29-36, and confirmed that no promises or threats had been made to induce Denney to plead guilty, *id.* at 36.  Thus, Denney "is precluded from obtaining relief on the ground he was unconstitutionally denied a speedy trial unless he can initially demonstrate that his plea of guilty was not based upon reasonably competent advice of counsel" *i.e.*, that counsel was ineffective. *Smith*, 677 F.2d at 40–41 (citing *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *McMann v. Richardson*, 397 U.S. at 770-71 (1970)).[3]

---

[3] During his plea colloquy, and while under oath, Denny stated that he was satisfied with his counsel's performance. ECF 55 at 16 ("The Court: Are you fully satisfied with the services of your lawyers in this case? The Defendant: Definitely, yes sir.").  Denny's statement under oath that he was satisfied with his counsel's performance is presumed to be true. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity"); *United States v. Farley*, 72 F.3d 158, 164-65 (D.C. Cir. 1995) (quoting *Blackledge*); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (strong presumption that statements made during guilty plea colloquy are true). Denny's stated satisfaction with his counsel provides evidence in the record that would contradict any claim that his attorneys performed deficiently.

**E. Denney Cannot Show that Counsel's Recommendation to Plead Guilty Was Deficient.**

To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that: (1) counsel's performance was deficient, and (2) counsel's deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also, United States v. Gooch,* 842 F.3d 1274, 1279 (D.C. Cir. 2016); *United States v. Murray*, 897 F.3d 298, 310–11, (D.C. Cir. 2018) (explaining the *Strickland* standard). "'Surmounting [this] high bar is never an easy task.'" *United States v. Brinson-Scott*, 714 F.3d 616, 623 (D.C. Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

To establish deficient performance, a defendant must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant "must identify the acts or omissions of counsel" that were not the result of "reasonable professional judgment," and the Court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The first *Strickland* factor requires a defendant to "show that counsel's actions were not supported by a reasonable strategy...." *Massaro,* 538 U.S. at 505; *United States v. Brisbane*, 729 F.Supp.2d 99, 109 (D.D.C. 2010) (same). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* at 689; *see also, Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.")

To show prejudice, a defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, at 694. "To satisfy the prejudice requirement in the context of an attack on a guilty plea, 'the defendant must show that there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial.'" *In re Sealed Case*, 488 F.3d 1011, 1016 (D.C. Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Notably, establishing a "reasonable probability" requires that "the likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011); *see also Brinson-Scott*, 714 F.3d at 624. The prejudice inquiry is founded in part on the recognition that the government's substantial interest in the finality of guilty pleas would be undermined if it were too easy for defendants seeking a better outcome to challenge a guilty plea after the fact. *See Hill*, 474 U.S. at 58; *see also United States v. Timmreck*, 441 U.S. 780, 784 (1979) ("[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.") (internal footnote omitted).

Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats an ineffectiveness claim. *See Strickland*, 466 U.S. at 700. Consequently, the reviewing court need not even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

With respect to counsel's performance, the strategy to forgo the motion to dismiss the Indictment and plead guilty to a single charge in the hope that doing so would prevent or discourage the government from bringing additional charges, *see* ECF No. 55 at 12-14, was not an unreasonable one – in fact, the government did not bring additional charges. "[A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged" the likelihood of a particular outcome. *McMann*, 397 U.S. at 770. Nor did the decision to dismiss the Speedy Trial Act motion prejudice Denney. The government *did* find additional conduct that could have formed the basis of an additional charge (and would not have been subject to the determination of the Speedy Trial Act motion). *See* ECF

No. 67 at 7 n.4.  And, as Denney's counsel explained at the change of plea hearing, the Court would still have been able to consider the full universe of Denney's conduct, even had certain charges been dismissed.  ECF No. 55 at 12.

### F.  Denney's Claims Are Meritless

Denney cannot show the type of fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. With respect to his Speedy Trial Act objections, Denney chose to withdraw his claims before changing his plea.  Moreover, Denney makes no showing that absent that withdrawal, under the circumstances in his case a Speedy Trial Act violation would have resulted in dismissal of the charge against him with prejudice.  Denney was aware of the Speedy Trial Act issues in his case prior to his change of plea, and he does not claim that he would have declined to plead guilty because of those issues.  Accordingly, his attempt on a collateral attack to renew objections under Section 3161 must fail.

Denney's claim that agents failed to comply with the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966), similarly fails to meet the standard for relief under Section 2255.  Although Denney claims for the first time that post-arrest questioning continued after he requested counsel, Denney provides no detail for what he said in the absence of counsel.  He does not allege or show that if any statements were obtained in violation of *Miranda*, such statements, as opposed to statements made before any purported *Miranda* violation occurred, were used against him to secure his conviction, or that the government's evidence was insufficient to support his conviction absent the statements he now contests.  (Indeed, "a guilty plea normally rests on the defendant's own admission in open court that he has committed the acts with which he is charged. . . . The plea of guilty does waive, however, all nonjurisdictional defects in the proceeding. In particular, it bars

any claim that the prosecution obtained evidence unlawfully, or that the defendant was illegally detained . . . ." *United States v. Cox*, 464 F.2d 937, 940 (6th Cir. 1972) (internal quotation omitted)).  Denney again fails to establish that his conviction resulted in a miscarriage of justice or the rudiments of fair procedure.

Finally, Denney has failed to demonstrate that he is entitled to any relief under Rule 5(c)(3)(E).  First, this Court did not lack access to any document from the Western District of Texas.  Second, although the rule imposes a requirement to transmit documents from the district of arrest to the district of prosecution, the rule provides no remedy if its terms are violated.  "There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." *United States v. Montalvo-Murillo*, 495 U.S. 711, 719 (1990) (failure to comply with Bail Reform Act's prompt hearing requirement did not deprive government of ability to seek pretrial detention of defendant); *United States v. Bourdet*, 447 F.Supp. 2d 164, 175 (D.D.C. 2007) (Mansfield Amendment, 22 U.S.C. § 2291(c), was silent as to remedies for its breach, and no court has ever applied a remedy for its violation) (citing *Montalvo-Murillo*; additional citations omitted).  Denney has not shown that Rule 5(c)(3)(E) entitles him to any remedy for a violation of its prompt transmission requirement.  He neither demonstrates nor alleges that as a result of any failure he has suffered any harm.  Here too, he fails to meet the standard for Section 2255 relief. This Court should reject all of Denney's claims.

## **CONCLUSION**

For the reasons discussed herein, the Court should summarily deny the claims in defendant's Motions.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY: _____
Benet J. Kearney
Assistant United States Attorney
N.Y. Bar No. 4774048
26 Federal Plaza
New York, New York 10278
(212) 637 2260
Benet.Kearney@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Opposition to Defendant's Motions for Release

and to Vacate, Set Aside, or Correct Sentence was served on the defendant via U.S. Mail.


*/s/ Benet J. Kearney*
BENET J. KEARNEY
Assistant United States Attorney


Date:  September 23, 2024